Next case on this morning's docket is People v. Smith, Jeffrey Smith, and we have Ms. Salisco and Ms. Shanahan. Ms. Salisco, you may proceed. Ms. Shanahan The defendant was on trial for the death of his infant son. Now the medical examiner who performed the autopsy did not testify at trial and the state never did explain why he did not testify. Instead, prior to trial, the state moved to admit the autopsy report as substantive evidence in lieu of the medical examiner coming to testify. An over defendant's objection, the report was admitted. Now in Crawford v. Washington, the United States Supreme Court set out requirements for the admission of testimonial hearsay, which we're arguing that this autopsy report is in fact testimonial hearsay. The witness must be unavailable. There must have been a prior opportunity to cross. Unless there are both of those requirements met, defendant's right to confront witnesses is violated and he's entitled to a new trial. As I said, the witness, we don't know if he was unavailable, if he just simply didn't want to come to court, if he was busy that day, he was having a bad hair day. We have no idea why he didn't, wasn't at trial. But don't we have a particular statute that allows for the use of autopsy reports under the business record exception? Yes, but the statute is not in conformity, and I'm not really arguing that the statute's unconstitutional, but it's really not in conformity with Crawford. Since Crawford, I think it kind of casts... Aren't you really arguing that it's unconstitutional if it's not in conformity with Crawford? Well, I guess in the end it is, yes. But I'm saying that as a business record, autopsy reports, particularly in this case, and I'm not going to generalize back all autopsy reports, but when they're admissible as substantive evidence in cases like this, they're different than a business record. A business record is kept as a record of the checks that arrived, the phone calls that were made, the payroll, shipping, things that we've shipped out. In this case, an autopsy report is much more like a police report. It's initiated because the authorities think that there was something suspicious about the death, in this case. They thought, you know, this child did not just die. But it doesn't have to be suspicion that rises to a criminal suspicion. I mean, I thought that autopsies were required whenever there's an unknown, or it could be suspicious, but it could be just unknown reasons that there is a death that are totally unrelated to a crime. Correct. It's when there's a question about the death. We don't know why. But they're made with, like a police report. He'll come and investigate a crime. We don't know if maybe when he arrives on the scene, he doesn't know that a crime really has been committed. He has to look into it to find out. The same with an autopsy report in cases like this. There's something suspicious. There was something that alerted us to this. Well, in this case, it was the death. The medical examiner performs the autopsy and makes conclusions, writes these things down in his report in case the grand jury or whoever, the coroner's jury, whatever they're called, decides at some point that in fact this should be prosecuted further. That in fact there was a criminal act, just like the policeman goes in and, okay, yes, I see that now. Yes, there was a robbery here. Or circumstances make it look like there was a robbery. We should take it to the prosecutor. The same with the autopsy in this case. There's something going on. They call in the medical examiner. He examines the child. Yes, there's something here that makes us think we should take this case to the prosecutor. The autopsy results are written with an eye toward litigation, as opposed to a normal business record, which is just the record of the phone calls that I made during the course of my business so that I can verify it or check it against the phone records or, you know, if I need it to say I called him, so and so, a day. And I do concede that there are cases in Illinois that do hold that autopsy reports are admissible as business records. You're not suggesting that all autopsies are performed with an eye towards prosecution, are you? No. Then why would you distinguish between this one as opposed to any other autopsy? Well, because most autopsies, and I can't think of an autopsy that wouldn't be, but most autopsies are initiated because there's something suspicious about the death. Unknown, I don't know, but initially you're suspicious. Unknown, exactly, unknown. Very, very, very, very few autopsies lead to criminal prosecution. Wouldn't that be a safe thing to say? As far as I know, I can't dispute that. So all of them aren't geared towards prosecution. Correct. And not all house fires lead to an arson investigation or an arson prosecution either. But the fire marshal's initial reason for even being there is because there was a house fire. So he sees something that makes him believe that maybe this was not an accident. So the rest of his investigation is focused toward an arson prosecution. The fire marshal doesn't go to all fires, though. No, there has to be something somewhere. There has to be something somewhere, though, that alerts someone to call him in. And just like this, there's a child. Then babies may die because they swallow something and choke to death. That's correct. They wouldn't know that until they had the autopsy. That's correct. So that autopsy obviously wasn't, I mean, they didn't know the cause of death, but it wasn't geared toward prosecution. Well, it was specifically in this case because they already had defendant's statement and that. No, maybe not all autopsies. All autopsies are. But I think the fact that the death was unknown in all autopsies, the death was unknown. They call in the M.E. to find out why. If in the course of his investigation or performance of the autopsy, he finds out that he, in his professional opinion, believes there's a link, the rest of his autopsy is going to be recorded and drawn with an eye toward, let's find out why this unusual thing has happened. Perhaps we need to prosecute someone. You're saying the autopsy is performed by a pathologist. Right. So you're saying that the pathologist performs the autopsy with an underlying motivation to prosecute somebody? No, but he needs to protect the pathologist, we have to assume, would know the difference between a child choking on a cough drop and a child being hit on the head. He would know the difference in those deaths. Choking on something is more than likely accidental. Being hit on the head with a sharp instrument is more than likely not accidental. I mean, it could be, but there might be more to that. Once he concludes that this, or once he's finding things that may lead to the belief that the death was not natural, then yes, I think that he changes the focus of his report to, okay, this might end up in trial at some point. Because I am finding things that may lead me to believe that the death was not natural. So you're saying just because, if it's a medical finding that would imply criminal involvement, then the doctor is doing his autopsy then, after that finding and furtherance of prosecuting someone. I don't think it's a conscious decision, and I don't think that he or she necessarily changes the way they do anything. But the report itself changes from simply a recording of a procedure to an instrument in prosecution. It's, like I said, the M.E. himself may not change what he does, but the whole focus has shifted a little bit. Let me ask you this. Does the record show that all shaken baby syndrome cases occur by somebody shaking a baby? Or could it happen, like, not being secured in your carcery? Are there other ways that a child could die of shaken baby syndrome without involving the criminal code? I know that there are, but I don't think that was presented at trial. I'll just stop there. Thank you, Ms. Zulisko. You all have the opportunity for rebuttal. Okay, thank you. Ms. Shanahan. May it please the court, counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. I would just briefly note that I filed a motion to cite official authority this morning. I'm not going to discuss those cases because I just don't want to file a motion. I don't even think we've reviewed the motion yet, so we'll take the motion with the case. Yeah, it's just a couple of other cases that are dealing with this similar issue. The only thing I would say is that People v. Williams, which is one of the cases that is a Supreme Court case, that did discuss People v. Lovejoy, which I will be discussing shortly. Clearly, from the questions to defense counsel, this bench is well aware of what the autopsy statute says. I was going to read it, but I'm not going to because you caught on to the most important thing, which is that it specifically says that the coroner's records are kept in the ordinary course of business. And not once, not twice, but three times, not counting the two, but well, three times, courts have decided that autopsy reports do not violate Crawford, do not violate the new case of Mendez-Diaz. And are properly admitted as business records exceptions. In People v. Moore, the court said that a plain reading of the statute governing the admissibility of the medical examiner's report as evidence establishes that an autopsy report should be treated as a business record. The Moore court pointed out that pre-Crawford, Illinois courts had always held that autopsy reports were business records. And even after examining Crawford, they said since Crawford specifically exempts business records, that autopsy reports don't implicate Crawford and don't deny a defendant his right to confrontation. Similarly, in Leach, the court noted that prior to Crawford, Illinois courts allowed autopsy findings from a non-testifying medical examiner, and that that result continued after Crawford. So there's no hearsay bar there. They noted that autopsy reports are by definition business records, and that the rationale underlying the admissibility of business records is the recognition that businesses are motivated to keep routine, accurate records, and they are unlikely to falsify records kept in the ordinary course of business and upon which they depend. Hence, the Leach court found that the credibility of records was founded on the regular, prompt, and systematic nature of the entry and the fact that they were relied upon in the course of business. In People v. Cortez, decided just this summer, Cortez considered the newest Supreme Court decision, Melendez-Diaz, which could be argued to expand the concept of Crawford. But in Cortez, the defendant suggested that the autopsy report was similar to the certificates admitted in Melendez-Diaz, but the Cortez court pointed out the well-established law in Illinois was that autopsy reports are business records, don't implicate Crawford, Crawford specifically excludes business records, and that autopsy reports are created for the administration of the medical examiner's affairs, not litigation, and even under the newest decision, Melendez-Diaz, they still found it admissible. I would note that, Justice Chapman, you were talking about the fact that there are lots of times that an autopsy, and Justice Bomer, you too, that an autopsy is not done when there's any kind of criminal suspicion at all, because an autopsy statute includes suicides, it includes accidents, it includes drowning, it includes sudden infant death syndrome, it includes drug overdoses, whether they're accidental or intentional, in fact, it includes any death where the decedent is not attended by a licensed physician. If I'm dead tomorrow morning, they're going to say, well, she seemed fine in court yesterday, and they're going to do an autopsy, simply because no one was around when I died. So there are lots and lots and lots of autopsies that are done that have nothing to do with a criminal case. Consider this, if these parents had not taken the baby to the hospital, and the baby died. We've just got a dead baby. They could say, sudden infant death syndrome, he just died, we guess, we don't know. There still would have been an autopsy, even if what they believed to be was sin. So since there are many, many, many autopsy reports that have nothing to do with criminal cases, and a medical examiner is called in to do an autopsy in any case where there is an unknown cause of death, it is clear that the reason in the statute for these being business records is correct. I would also note that in People v. Lovejoy, our Supreme Court said that they reject the proper claim that a report was improperly admitted, since the testifying expert relied on the report in making his determination. The Supreme Court pointed out that the prohibition against admission of hearsay does not apply when an expert testifies to the underlying facts and data not admitted to evidence for the purpose of explaining the basis of his opinion. It goes back to Wilson v. Clark. The Lovejoy court pointed out the rules have been expanded to permit experts not only to consider reports commonly relied upon by experts in their particular field, but also to testify to the contents of the underlying records. And the Lovejoy court concluded that a medical report relied upon by a testifying expert, which is elicited to show the fact finder that the steps that the expert took prior to rendering an expert opinion is not admitted to prove the truth of the underlying assertion. Since Dr. Johnson relied on the autopsy report in confirming her diagnosis and the cause of the baby's death here under Lovejoy, it simply is not hearsay. Finally, I would note that there is, if anything, I think there was no error at all, but if there was, it was certainly harmless error. Proper violations are subject to harmless error analysis. Dr. Johnson made her own independent examination of the baby. She did a physical examination of him. She obtained x-rays. She examined his retinas. She performed a CAT scan and an MRI. And essentially the autopsy report simply confirmed her independent findings of subdural hemorrhage, subarachnal hemorrhage, and broken ribs. So it certainly couldn't, the admission of the autopsy report couldn't have harmed anything. In fact, it's kind of ironic in the sentencing hearing, but I think defense counsel relies upon the autopsy report to try and contradict Dr. Johnson's findings. I think that as far as the other two issues, Dr. Johnson's expertise is clearly set forth as a pediatric intensivist with an extensive experience in shaken baby syndrome. And given the fact that the defendant had been suspected of prior abuse of an injury to one of his other daughters and had a criminal history, I believe the sentence was appropriate. So that's pretty much all I will say on those. Thank you, Ms. Shanahan. Do you have rebuttal, Ms. Julisco? Yes. Okay. Thank you. Sorry. Your time starts now. That's okay. Ms. Shanahan had argued that autopsies for deaths or that when death is accompanied by a licensed physician, autopsies are not usually performed. There was a licensed physician here. So why was the autopsy performed? Because some thinking was going on. Therefore, in this case, regardless of the other cases, it obviously, the autopsy was written with an eye toward prosecution. They wanted to investigate how this child died. The state talks about love-joy and the fact that an expert used the autopsy to testify. The issue that I didn't get to in this case was that Dr. Johnson should not have been qualified as an expert. Yes, she was a pediatric intensivist, which I'm sorry, I've never heard of that before. It doesn't mean that she wasn't an expert. It doesn't mean that she couldn't have testified as to this child's injuries. But she went beyond that without proving, or the state didn't lay a foundation for her expertise, but she was like, there's simply no other conclusion than shaken baby syndrome. And she gave a bunch of opinions about shaken baby syndrome. She'd never testified as an expert before. She had studied shaken baby syndrome, and she had read extensively. But that doesn't necessarily qualify her as an expert. And that did not come out during the qualification part. That just came out during her testimony. The state did not lay the foundation for her to be allowed to testify as an expert. Now, where this whole autopsy thing is prejudicial is not every time you shake a baby, it does not result in injury or death. Mr. Fettersen talked about it in the case right before us, how his client had shaken the baby, and apparently the baby was fine. So the fact that Mr. Smith said, I shook the baby, does not necessarily mean that that's what caused the baby's death. Yet the autopsy report was used by itself to say that's what caused its death. And then Dr. Johnson relied on it with her supposition that this was shaken baby syndrome. Again, the autopsy report in this case was written with an eye toward prosecution. It should not have been allowed in as substantive evidence. Other questions on any of the other issues? Thank you. Thank you both for your arguments and briefs. We'll take the matter under advisement, render ruling in due course. And we have taken the motion to cite additional authority.